268 A.2d 707 (1970)
In re SEVEN MAGAZINES.
No. 886-Appeal.
Supreme Court of Rhode Island.
August 17, 1970.
Herbert F. DeSimone, Atty. Gen., W. Slater Allen, Asst. Atty. Gen., for petitioner.
Leonard A. Kamaras, Providence, Robert Eugene Smith, Towson, Md., for respondent.

OPINION
JOSLIN, Justice.
The Attorney General acting pursuant to G.L. 1956, chap. 31.1 of title 11, as amended by P.L. 1966, chap. 257, sec. 1, brought this in rem proceeding in the Superior Court against seven magazines.[1] He alleged *708 reasonable cause to believe the publications were obscene, and, based upon his petition, an ex parte order was entered restraining the sale and commercial distribution of the magazines.
In due course the case was heard on its merits before a trial justice sitting without a jury. At that hearing the seven magazines were introduced as exhibits. In addition there was oral testimony from the Providence police officer who had purchased the magazines. He described the premises where the publications were offered for sale, the manner in which they were displayed, and the amount paid for them. No evidence was proffered either by the state or by respondents on whether the publications were obscene vel non in the constitutional sense.
At the conclusion of this limited hearing the trial justice quashed the ex parte restraining order as having been improvidently issued. He then found that chap. 31.1 of title 11, except for § 11-31.1-4,[2] was constitutionally valid and that the publications were obscene "as a fact." The respondent publishers appealed.
A generalized description of the magazines will create an adequate factual frame of reference. They are of three separate types. "Candy," commonly known as a "girlie magazine," contains pictures of nude or scantily clad women so posed as to focus on the public area or the breasts; "Big Boys" displays frontal views of nude or semi-nude males with emphasis on the penis; and "Jaybird Happenings" and "Naked Nuts" contain photographs of mixed groups of either nude or partially clad males and females posed so as to draw attention to their genitalia. In some instances the sexual organs of the male and female are in close proximity to each other, and at other times the penis is in close juxtaposition to the breasts of the female. Other than for the captions accompanying the photographs, there is little textual material. "Jaybird Happenings," for example, contains an article purporting to describe some of the problems associated with the photographing of nudes, and "Big Boys" has one advocating nudism as a "BODY-BUILDER."
The state does not assert, nor have we found, any depiction of an act of sexual intercourse, sodomy or sadism, nor are there any photographs of an orgy-like character.
The question for us is not whether the magazines and the photographs are inexcusably vulgar, filthy, revolting and disgusting  and that they are in our judgment[3]  but whether they are obscene in the constitutional sense as defined by the United States Supreme Court.
The originating modern-day definition of obscenity in the constitutional sense is *709 found in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). There a majority of the Court, while saying that "obscenity is not within the area of constitutionally protected speech or press," id. at 485, 77 S.Ct. 1309, 1 L.Ed.2d at 1507, also said that "* * * sex and obscenity are not synonymous." Id. at 487, 77 S.Ct. at 1310, 1 L.Ed.2d at 1508. The majority then defined as obscene that kind of material the dominant theme of which, taken as a whole and applying contemporary community standards, appeals to the prurient interests of the average person. Id., at 489, 77 S.Ct. at 1311, 1 L.Ed.2d at 1509. Under that definition, as elaborated in subsequent cases, three elements must coalesce:
"* * * it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." Memoirs v. Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1, 5-6 (1966).
These were the tests, somewhat amplified, which the legislature delineated in § 11-31.1-7 as preconditions to an adjudication of obscenity, and which the trial justice referred to in these cases, except that the contemporary community standard he relied upon was local[4] rather than national in scope. Local guidelines are not appropriate, however, for if each of the 50 states were free to apply its own contemporary community standard for what it might proscribe as obscene "* * * the constitutional limits of free expression in the Nation would vary with state lines." Pennekamp v. Florida, 328 U.S. 331, 335, 66 S.Ct. 1029, 1031, 90 L.Ed. 1295, 1298 (1946). It was to avoid that kind of unthinkable result that Justice Brennan, announcing the judgment of the Court in Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964), in an opinion in which Justice Goldberg joined, said: "* * * the constitutional status of an allegedly obscene work must be determined on the basis of a national standard. It is, after all, a national Constitution we are expounding." Id. at 195, 84 S.Ct. at 1682, 12 L.Ed.2d at 802. (Emphasis supplied.) Accord, Judgment of the Court as announced by Justice Harlan in Manual Enterprises, Inc. v. Day, 370 U.S. 478, 488, 82 S.Ct. 1432, 1437, 8 L.Ed.2d 639, 647 (1962).
The Roth-Memoirs ground rules have by no means solved the problems which have come before the courts, and a reading of the cases makes it obvious that judges have been troubled in applying those guidelines to the materials which have been before them for adjudication. Apparently not even the Supreme Court was satisfied that its prior pronouncements were adequate to solve the recurring conflict between the First Amendment guarantees on the one hand and the power of the states to suppress the sale and distribution of books and magazines on the other. What other explanation can there be for Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967)? There, in a per curiam opinion subscribed to by seven of the Justices, the Court reversed three lower court determinations of obscenity. Instead of relying solely on the Roth-Memoirs standard as the yardstick by which to gauge what was obscene, the Justices summarized their diverse views about what publications *710 are protected from governmental suppression, whether criminal or civil, in personam or in rem. Then, in resolving the litigation before it, the Court held that "Whichever of these constitutional views is brought to bear upon the cases before us, it is clear that the judgments cannot stand."[5]Id. at 771, 87 S.Ct. at 1416, 18 L.Ed.2d at 518. The announced views of the Justices follow:
"Two members of the Court have consistently adhered to the view that a State is utterly without power to suppress, control, or punish the distribution of any writings or pictures upon the ground of their `obscenity.' A third has held to the opinion that a State's power in this area is narrowly limited to a distinct and clearly identifiable class of material. Others have subscribed to a not dissimilar standard, holding that a State may not constitutionally inhibit the distribution of literary material as obscene unless `(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value,' emphasizing that the `three elements must coalesce,' and that no such material can `be proscribed unless it is found to be utterly without redeeming social value.' * * * Another Justice has not viewed the `social value' element as an independent factor in the judgment of obscenity." Id. at 770-71, 87 S.Ct. at 1416, 18 L.Ed.2d at 518. (citations and footnotes omitted.)
When the Court in Redrup said that a third Justice limited obscenity "to a distinct and clearly identifiable class of material," it refers to the views of Justice Stewart who, in his concurring opinion in Jacobellis v. Ohio, 378 U.S. 184, 84 S. Ct. 1676, 12 L.Ed.2d 793 (1964), wrote:
"I have reached the conclusion, which I think is confirmed at least by negative implication in the Court's decisions since Roth and Alberts v. California, 354 U.S. 374, 77 S.Ct. 1304, 1 L.Ed.2d 1498, that under the First and Fourteenth Amendments criminal laws in this area are constitutionally limited to hard-core pornography. I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that." Id. at 197, 84 S.Ct. at 1683. 12 L.Ed.2d at 803-04. (Emphasis supplied.)
To ascertain what is and what is not "hard-core pornography" in Justice Stewart's lexicon, we look to his dissenting opinion in Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L. Ed.2d 31 (1966). There, making the attempt which in Jacobellis he had avoided, he said:
"There does exist a distinct and easily identifiable class of material in which all of these elements coalesce. It is that, and that alone, which I think government may constitutionally suppress, whether by criminal or civil sanctions. I have referred to such material before as hard-core pornography, without trying further to define it. Jacobellis v. Ohio, 378 U.S. 184, at 197 [84 S.Ct. 1676 at 1683, 12 L.Ed.2d 793 at 803-04] (concurring opinion). In order to prevent any possible misunderstanding, I have set out in the margin a description, borrowed from the Solicitor General's brief, of the kind of *711 thing to which I have reference." Id. at 499, 86 S.Ct. at 957, 16 L.Ed.2d at 54.
We similarly set out in the margin the same description.[6]
Perhaps based in part on what Justice Stewart has said, and perhaps based also on the Redrup recital that "others have subscribed to a not dissimilar standard," there are authorities which appear to have adopted hard-core pornography as the determinant of what is and what is not proscribable. Thus, for example, in Luros v. United States, 389 F.2d 200 (8th Cir. 1968), the court said:
"In Redrup v. State of New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515, there is specific indication that a majority of the Supreme Court adopts standards `not dissimilar' to banning only `hard-core' pornography. Subsequent application of Redrup gives no contra-indication." Id. at 205-06. (footnotes omitted.) (Emphasis supplied.)
And more recently in Hunt v. Keriakos, 428 F.2d 606, (1st Cir.), the court said:
"Rather, we are obliged to conclude that no photograph of the female anatomy, no matter how posed if no sexual activity is being engaged in, or however lacking in social value, can be held obscene." Id. at 608; Accord, People v. Noroff, 67 Cal.2d 791, 433 P.2d 479 (1967); State v. Justice.L. Marshall News Co., 13 Ohio Misc. 60, 232 N.E.2d 435 (1967); See also Magrath, The Obscenity Cases: Grapes of Roth, 1966 Supreme Court Review 7 at 69-77. See, however, Mishkin v. New York, 383 U.S. 502, 508, 86 S.Ct. 958, 963, 16 L.Ed.2d 56, 61, a case decided prior to Redrup, where the court describes the hard-core pornography test of obscenity as "more stringent than the Roth definition."
Whether we should read Redrup in this light and conclude that obscenity in the constitutional sense and hard-core pornography are synonymous is a question we do not reach. Neither do we decide whether the magazines before us are constitutionally obscene under any of the other views expressed in Redrup, although if we were forced to make that decision, initially at least, we would compare the materials before us with those already passed upon by the Supreme Court. Applying that kind of comparison test would make it exceedingly difficult for us to find that the magazines here are any more or less obscene than are the copies of "Cover Girl", "Exciting" and "Jaybird Photographer" No. 9, with which we have been supplied. These magazines were adjudged obscene in the constitutional sense by the Michigan Court of Appeals in Grand Rapids City Attorney v. Bloss, 17 Mich.App. 318, 169 N.W.2d 367, but on June 1, 1970, the Supreme Court in a per curiam opinion summarily reversed. Bloss v. Dykema,[7] 398 U.S. 278, 90 S.Ct. 1727, 26 L. Ed.2d 230.
*712 In a subsequent case, Judge Aldrich, Chief Judge for the U.S. Court of Appeals for the First Circuit, comparing the magazines before his court with those recently passed upon in Bloss, said:
"* * * once the point of full exposure of the perineal area has been reached, there is little basis to choose between one illustration and another. * * * Indeed, to do so would render the question of obscenity vel non even more amorphous than any test previously suggested." Hunt v. Keriakos, supra, at 607.
For reasons the most obvious of which are the lack of a clear expression of definitive guidelines and the uncertain state of what is and what is not obscene as a question of law, we do not decide whether the publications before us are obscene. Instead we reverse on the ground that the state has failed on any conceivable basis to prove its case. Here, as will be recalled, the only evidentiary predicate for the conclusion that the publications are obscene under any of the views expressed in Redrup are the publications themselves. Apparently, the prosecution believes that a theory akin to res ipsa loquitur applies to obscenity cases, and that no evidence other than the presentation of the magazines is required in order to establish a violation of the statutory and constitutional standards. While we have no doubt that "* * * hard-core pornography * * * can and does speak for itself," United States v. Wild, 422 F.2d 34, 36 (2d Cir.1969); Accord, Womack v. United States, 111 U.S.App.D.C. 8, 294 F.2d 204 (D.C. Cir.1960), certainly materials falling short  as do these publications  cannot be classified as obscene merely upon the presentation of the publications without more.
Justice Frankfurter, concurring in Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), made this point more than ten years ago. Smith was a case where the Court reviewed the conviction of the proprietor of a bookstore who had been prosecuted under an ordinance imposing "strict" or "absolute" criminal liability for mere possession of obscene books in his place of business. The majority found that the absence of a scienter requirement was a constitutional infirmity. Justice Frankfurter concurred on the ground that the bookseller had been denied an opportunity to present testimony through duly qualified witnesses concerning the prevailing literary standards by which books relevantly comparable to that in controversy had been deemed not obscene. In the course of his opinion, the distinguished Justice made clear his view that:
"* * * community standards or the psychological or physiological consequences of questioned literature can as a matter of fact hardly be established except through experts * * *. Of course the testimony of experts would not displace judge or jury in determining the ultimate question whether the particular book is obscene, any more than the testimony of experts relating to the state of the art in patent suits determines the patentability of a controverted device.
There is no external measuring rod for obscenity. Neither, on the other hand, is its ascertainment a merely subjective reflection of the taste or moral outlook of individual jurors or individual judges. Since the law through its functionaries is `applying contemporary community standards' in determining what constitutes obscenity, Roth v. United States, 354 U.S. 476, 489, [77 S.Ct. at 1311, 1 L.Ed.2d at 1509] it surely must be deemed rational, and therefore relevant to the issue of obscenity, to allow light to be shed on what those `contemporary *713 community standards' are. Their interpretation ought not to depend solely on the necessarily limited, hit-or-miss, subjective view of what they are believed to be by the individual juror or judge." Id. at 165, 80 S.Ct. at 225, 4 L.Ed.2d at 218.
The expert testimony which Justice Frankfurter insisted upon in Smith has since been considered essential to the obscenity adjudication of a variety of materials. Illustrative are: In re Giannini, 69 Cal.2d 563, 446 P.2d 535 (a dance performed by a "topless" dancer before an audience); United States v. Klaw, 350 F.2d 155 (2d Cir.1966) (booklets depicting sadistic and masochistic conduct); House v. Commonwealth, 210 Va. 121, 169 S.E.2d 572 ("girlie" magazines); Duggan v. Guild Theatre, Inc., 436 Pa. 191, 258 A.2d 858 (the motion picture "Therese and Isabelle"); Dunn v. State Board of Censors, 240 Md. 249, 213 A.2d 751 (the motion picture "Lorna"); Hudson v. United States, D.C.App., 234 A.2d 903 (a burlesque show); Ramirez v. State, Okla. Crim., 430 P.2d 826 (the motion picture "Night of Lust"); City of Phoenix v. Fine, 4 Ariz.App. 303, 420 P.2d 26 ("Nudist" and "girlie" magazines also various books). The rule, of course, is otherwise where the publications are hard-core pornography for then the publications speak for themselves. United States v. Wild, Womack v. United States, both supra.
In conclusion we observe that the constitutional issue would be different if in these cases there were evidence  and we re-emphasize that there was none here  of pandering as in Ginzberg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L. Ed.2d 31 (1966), of sales to minors under the principle of Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L. Ed.2d 195 (1968), or of an assault upon individual privacy in a manner so obtrusive as to make it impossible to avoid exposure. Redrup v. New York, 386 U.S. at 769, 87 S.Ct. at 1415, 18 L. Ed.2d at 517.
For the reasons indicated the respondents' appeals are sustained, and the judgments appealed from are reversed.

APPENDIX
Keney v. New York, 388 U.S. 440, 87 S.Ct. 2091, 18 L. Ed.2d 1302, rev'g judgment of County Court of Monroe County, New York.
Friedman v. New York, 388 U.S. 441, 87 S.Ct. 2091, 18 L.Ed.2d 1303, rev'g judgment of the Appellate Term of the Supreme Court of New York, First Judicial Department.
Ratner v. California, 388 U.S. 442, 87 S.Ct. 2092, 18 L. Ed.2d 1304, rev'g judgment of the Appellate Department of the Superior Court of California. San Mateo County. (Film "Honey Bee").
Cobert v. New York, 388 U.S. 443, 87 S.Ct. 2092, 18 L. Ed.2d 1305, rev'g 15 N.Y.2d 1020, 207 N.E.2d 619 (Films "June Palmer #2," "m. Jordan," "Jayne Tracy").
Sheperd v. New York, 388 U.S. 444, 87 S.Ct. 2093, 18 L. Ed.2d 1306, rev'g judgment of the Appellate Term of the Supreme Court of New York, First Judicial Department.
Avansino v. New York, 388 U.S. 446, 87 S.Ct. 2093, 18 L.Ed.2d 1308, rev'g judgment of the Appellate Term of the Supreme Court of New York, First Judicial Department.
Aday v. United States, 388 U.S. 447, 87 S.Ct. 2095, 18 L. Ed.2d 1309, rev'g sub nom. United States v. West Coast News Co., 357 F.2d 935 (1st Cir.1966) (Book "Sex Life of a Cop").
Books, Inc. v. United States, 388 U.S. 449, 87 S.Ct. 2098, 18 L.Ed.2d 1311, rev'g 358 F.2d 935 (1st Cir.1966) (Book "Lust Job").
A Quantity of Copies of Books v. Kansas, 388 U.S. 452, 87 S.Ct. 2104, 18 L.Ed.2d *714 1314, rev'g 197 Kan. 306, 416 P.2d 703 (Books "Sin Hooked", "Bayou Sinners," "Lust Hungry," "Passion Priestess," "Sin Warden," "Flesh Avenger," "Shame Shop," "Fleshpot," "Sinners Seance." "Penthouse Pagans." "Shame Market").
Mazes v. Ohio, 388 U.S. 453, 87 S.Ct. 2105, 18 L.Ed.2d 1315, rev'g 7 Ohio St.2d 136, 218 N.E.2d 725 (Book "Orgy Club").
Schackman v. California, 388 U.S. 454. 87 S.Ct. 2107, 18 L.Ed.2d 1316, rev'g judgment of the Superior Court of California, County of Los Angeles.
Potomac News Co. v. United States, 389 U.S. 47, 88 S.Ct. 233, 19 L.Ed.2d 46, rev'g sub nom. United States v. 56 Cartons Containing 19,500 Copies of Magazine Entitled "Hellenic Sun" 373 F.2d 635. (Magazine "Hellenic Sun Number Two").
Conner v. City of Hammond, 389 U.S. 48, 88 S.Ct. 234, 19 L.Ed.2d 47, rev'g judgment of the Twenty-first Judicial District, Louisiana, Parish of Tangepahoa.
Central Magazine Sales, Ltd. v. United States, 389 U.S. 50, 88 S.Ct. 235, 19 L.Ed.2d 49, rev'g sub nom. United States v. 392 Copies of Magazine Entitled "Exclusive" 373 F.2d 633 (Magazines "Revue International, Vol. 6," "International Nudist Sun, Vol. 16," "Exclusive").
Chance v. California, 389 U.S. 89, 88 S.Ct. 253, 19 L. Ed.2d 256, rev'g judgment of the Superior Court of California, County of San Mateo.
I. M. Amusement Corp. v. Ohio, 389 U.S. 573, 88 S.Ct. 690, 19 L.Ed.2d 776, rev'g 10 Ohio App.2d 153, 226 N.E.2d 567.
Robert-Arthur Management Corp. v. Tennessee, 389 U.S. 578, 88 S.Ct. 691, 19 L.Ed.2d 777, rev'g 220 Tenn. 101, 414 S.W.2d 638 (Film "Mondo Trends").
Felton v. City of Pensacola, 390 U.S. 340, 88 S.Ct. 1098, 19 L.Ed.2d 1220, rev'g (Fla. App.) 200 So.2d 842, (Nudist Magazines).
Henry v. Louisiana, 392 U.S. 655, 88 S.Ct. 2274, 20 L. Ed.2d 1343, rev'g 250 La. 682, 198 So.2d 889.
Carlos v. New York, 396 U.S. 119, 90 S.Ct. 395, 24 L. Ed.2d 303, rev'g 24 N.Y.2d 865, 301 N.Y.S.2d 96 (Magazines "Candid," "Hefty").
Bloss v. Dykema, 398 U.S. 278, 90 S.Ct. 1727, 26 L.Ed.2d 230, rev'g 17 Mich.App. 318, 169 N.W.2d 367 (Magazines "Pinned" No. 1, "Jaybird Photographer" No. 9, "Cover Girl" #16, "Missie" No. 1, "Cover Girl" 12, "Cover Girl" 15, "Cover Girl" 13, "Exciting" 19, "Exciting" 14, "Exciting" 13, "Exciting" 14, "Cover Girl" N R 19, "Cover Girl" N R 15, "Cover Girl" N R 20, "Gigi)".
NOTES
[1] The magazines are entitled: (1) "Jaybird Happenings" No. 22; (2) "Candy" Collectors Issue No. 1; (3) "Naked Nuts" No. 3; (4) "Big Boys" No. 9; (5) "Taunt" Collector's Edition; (6) "Nudist" No. 12; (7) "Lesbians Confessions  Case Histories." No one appeared in the proceedings against publications numbered (5), (6) and (7). Preliminary injunctions were granted by default against those magazines.
[2] Section 11-31.1-4 permits a trial justice to issue a temporary restraining order against the sale, exhibition or commercial distribution of the publication proceeded against upon a finding that there is reasonable cause to believe that it is obscene. The case must then be heard within one day after joinder of issue and decision must be rendered within 48 hours of the conclusion of the hearing. This finding that the section was unconstitutional was made in reliance upon Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325.
[3] As expressive of our views we yield to the temptation to quote Judge Moore of the Second Circuit who, although concluding on the basis of expert testimony that the Swedish film "491" was not constitutionally obscene, nonetheless said:

"I personally found `491' repulsive and revolting * * *. Were I to be vested with dictatorial powers, I would ban and destroy the trash (in my opinion) which infests the news kiosks and the movie theatres in certain areas of New York City. I would do all this in the vainglorious belief that I was acting as a Beneficent Tyrant for the good of all Mankind. But the very utterance of these thoughts is more than sufficient reason to shy away from censorship except in extreme cases * * *." United States v. One Carton Positive Motion Picture Film Entitled "491", 367 F.2d 889, 897 n. 3 (2d Cir. 1966.)
[4] The trial justice found the magazine "Naked Nuts" patently offensive based upon the application of contemporary community standards relating to the description or representation of matters having prurient appeal as those standards exist in the state of Rhode Island; and in discussing the magazine "Jaybird Happenings" he said: "* * * the book is, in the opinion of the Court, patently offensive in that it does go beyond the limit of candor of contemporary community standards in the state of Rhode Island."
[5] Since May 8, 1967, the date of the Redrup decision, the Court, sometimes with one or more of the Justices either concurring or dissenting, has, without amplification but relying solely upon Redrup, summarily reversed in 21 cases the citations to which appear in the appendix attached. But see Landau v. Fording, 388 U.S. 456, 87 S.Ct. 2109, 18 L.Ed.2d 1317, aff'g per curiam 245 Cal.App.2d 820 (film "Un chant d'Amour").
[6] "`... Such materials include photographs, both still and motion picture, with no pretense of artistic value, graphically depicting acts of sexual intercourse, including various acts of sodomy and sadism, and sometimes involving several participants in scenes of orgy-like character. They also include strips of drawings in comic-book format grossly depicting similar activities in an exaggerated fashion. There are, in addition, pamphlets and booklets, sometimes with photographic illustrations, verbally describing such activities in a bizarre manner with no attempt whatsoever to afford portrayals of character or situation and with no pretense to literary value. All of this material ... cannot conceivably be characterized as embodying communication of ideas or artistic values inviolate under the First Amendment ...'" Ginzburg v. United States, supra, at 499 n. 3, 86 S.Ct. at 957 n. 3, 16 L.Ed.2d at 54 n. 3; Compare Morris v. United States, D.C. App., 259 A.2d 337; Hewitt v. Maryland State Board of Censors, 254 Md. 179, 254 A.2d 203.
[7] The text of the opinion in Bloss is: "The petition for a writ of certiorari is granted and the judgment is reversed. Redrup v. New York, 386 U.S. 767 [87 S.Ct. 1414, 18 L.Ed.2d 515]."

The Chief Justice and Justice White, without advancing any reason therefor, were of the opinion that certiorari should have been denied, and Justice Harlan dissented for the reasons given by him in separate opinions in Roth, Jacobellis, and Memoirs, all supra. Justice Marshall did not participate.