277 A.2d 924.

JOSEPH C. SCUNCIO *et al. vs.* COLUMBUS THEATRE, INC. *et al.*

JUNE 10, 1971.

PRESENT: Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This appeal arises after a hearing before a Superior Court justice and an entry of a judgment declaring the movie "Without A Stitch" to be obscene and enjoining the defendants from showing the film. The plaintiffs are members of the Bureau of Licenses of the City of Providence. They have instituted this suit in accordance with the provisions of G. L. 1956, §5-22-5, as amended by P. L. 1966, chap. 260, sec. 1.[1]

In determining that the movie was obscene the trial justice applied the three points of the so-called *Roth-Memoirs*[2] test and in essence found that:

1. Its dominant theme, taken as a whole, appeals to prurient interests in sex.

---

[1] The statute provides that, if a municipal licensing authority refuses an application for a license to show a particular motion picture because the licensing Bureau believes the movie to be obscene, it is the authority's obligation to file a complaint in the Superior Court for the counties of Providence and Bristol asking that the picture be declared obscene and the applicant be permanently enjoined from exhibiting the picture. *See, Shipyard Drive-In-Theatre, Inc.* v. *Scuncio,* 107 R. I. 554, 268 A.2d 820, *cert. denied,* 401 U. S. 1005, 91 S.Ct. 1252, 28 L.Ed.2d 541.

[2] *See, Roth* v. *United States,* 354 U. S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, and *A Book Named John Cleland's Memoirs Of A Woman Of Pleasure* v. *Massachusetts,* 383 U. S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1.

2. It is patently offensive and affronts contemporary community standards relating to the description and representation of sexual matters, and

3. It is utterly without *any* redeeming social value.

We must at the outset fault the trial justice's finding relative to the evaluation of community standards. At the trial he made it quite clear that when applying this criterion he was applying a *Rhode Island* rather than a *national* standard. This was error. We have said that since it is a national constitution that is being expounded, the status of allegedly obscene material must be determined by a *national* standard. *In re Seven Magazines,* 107 R. I. 540, 268 A.2d 707.

Notwithstanding the trial judge's error, we would point out that this is not a case wherein we are bound to follow the ruling of the Superior Court unless we find it to be clearly wrong. Instead, it is our duty to make an independent constitutional judgment on a mixed question of law and fact as to whether the subject matter before us is obscene. *Jacobellis* v. *Ohio,* 378 U. S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793. Because of this obligation, we have viewed the movie in addition to scrutinizing the record made in the Superior Court.

In the light of our ultimate conclusion, we see no need to set forth any synopsis of the movie's plot. To do otherwise, would add nothing with the possible exception of insuring an increase in the receipts at the box office. We have ruled in *In re Seven Magazines, supra,* that it is essential that expert testimony be presented to a court or jury as it seeks to determine if the material before it violates "contemporary community standards." Here, the Bureau had the burden of presenting evidence on that facet of its case and it has failed to do so. In the absence of such evidence, we cannot make any definite finding that the movie we have seen affronts a national community standard.

This court in *In re Seven Magazines, supra,* pointed out that it appears as though the Supreme Court was not satisfied that its prior pronouncements as to what constitutes obscene material were adequate to solve the recurring conflict between the guarantees of the first and fourteenth amendments and the power of the states to suppress the sale and distribution of such material. In reversing the trial court in the case at bar, we must acknowledge that courts and governmental agencies, such as plaintiff Bureau, have been engaged in a long and almost futile attempt to determine what is and what is not obscene as that term is used in its constitutional sense. The most recent decisions *Redrup* v. *New York*, 386 U. S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515; *Central Magazine Sales, Ltd.* v. *United States*, 389 U. S. 50, 88 S.Ct. 235, 19 L.Ed.2d 49; *Schackman* v. *California*, 388 U. S. 454, 87 S.Ct. 2107, 18 L.Ed.2d 1316; and *Bloss* v. *Dykema*, 398 U. S. 278, 90 S.Ct. 1727, 26 L.Ed.2d 230, extend the protection of the first amendment to material which, although depicting male and female nudity in sexually provocative poses, does not portray actual sexual congress or other activities commonly known as hard-core pornography.

We have found only one instance where, in recent years, the Supreme Court has upheld a lower court's determination that the *Roth-Memoirs* standards have been met and its declaration that the material under consideration was obscene. It occurred in a *Per Curiam* opinion, *Grove Press, Inc.* v. *Maryland State Board of Censors*, 401 U. S. 480, 91 S.Ct. 966, 28 L.Ed.2d 205. The Maryland Court of appeals[3] was sustained only because the Supreme Court was equally divided. Mr. Justice Douglas did not partici-

[3]The issue here was whether the motion picture film "I Am Curious (Yellow)" was obscene. The Court of Appeals on a four to three decision ruled that it was. *See, Wagonheim* v. *Maryland State Board of Censors,* 255 Md. 297, 258 A.2d 240.

pate. It must be remembered that Mr. Justice Douglas is one of two Justices who in *Redrup* was described as adhering to the view "\* \* \* that a State is utterly without power to suppress, control, or punish the distribution of any writings or pictures upon the grounds of their 'obscenity.'" It would appear, therefore, that, in the light of the present composition of the Supreme Court, the obscenity quandry confronting courts and state governments will continue to be with us for some time. Although the Supreme Court in *United States* v. *Reidel,* 39 U. S. L. W. 3523, reiterated the rule that the first amendment does not insulate obscenity from statutory regulation, the Court failed to set forth any standard for judging obscenity which might prove to be immune from constitutional attack.

The Court in *Reidel* alluded to the sentiments previously expressed by some that the law's involvement with obscenity should be limited to those circumstances where children are involved or where exposure to certain pictures or publications constitutes an assault upon an individual's privacy and then declared that this facet of the obscenity question is a matter for the state and municipal legislative bodies. We would respectfully point out, however, that any local legislature which wishes to proscribe the sale and distribution of obscene material to adults is presently faced with an almost impossible task in the absence of any definite and certain guidelines being promulgated by our nation's highest court as to just what will be considered obscene.

The defendants' appeal is sustained. The judgment appealed from is reversed.

POWERS, J., concurring. I agree with my brothers that the trial justice erred in applying a *Rhode Island* rather than a *national* standard and that having reached this conclusion it became incumbent on this court to make an independent judgment on a mixed question of law and fact.

I further agree that the making of such judgment necessitated personal viewing of the movie in question by this court.

However, I did not view the movie and am therefore in no position to either concur with the independent judgment of my brothers or can I, in these circumstances, make an independent judgment of my own.

Motion to reargue denied.

ROBERTS, C. J., did not participate.

*Robert J. McOsker,* City Solicitor, *Ronald H. Glantz,* Deputy City Solicitor, *Steven S. Saber,* Special Counsel, for plaintiffs.

*Abedon, Michaelson, Stanzler & Biener, Milton Stanzler,* for defendants.