292 A.2d 873.

JOSEPH C. SCUNCIO *et al. vs.* SHIPYARD DRIVE-IN

THEATRE, INC.

JUNE 28, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J.   This is an appeal from a judgment of the Superior Court declaring the film "How to Succeed with Love," also known as "How to Succeed with Sex," to be obscene and enjoining the defendant from showing the film.

The plaintiffs are members of the Bureau of Licenses for the City of Providence.   The defendant, Shipyard Drive-In Theatre, Inc., is the operator of a motion picture theatre in the city of Providence.

On July 2, 1970, defendant, pursuant to the provisions of G. L. 1956, §5-22-5, as amended by P. L. 1966, ch. 260, sec. 1, filed an application for a license to exhibit the above-mentioned film.   On the same day plaintiffs, after viewing the film,[1] decided that a license should not be granted because, in their opinion, the film was "probably obscene."

In accordance with the requirements of §5-22-5, as amended,[2] plaintiffs thereupon filed this complaint praying that the film be adjudged obscene and that defendant be permanently enjoined from presenting or showing the film in Providence.   The defendant filed an answer, the allegations of which require no discussion here.

---

[1]Chapter 1883 of the Code of Ordinances, City of Providence, Rhode Island, requires all exhibitors of motion pictures to exhibit same prior to the granting of a license.

[2]Section 5-22-5, as amended, provides that if a municipal licensing authority refuses an application for a license to show a particular motion picture because it believes the film to be obscene, it is the authority's obligation to file a complaint in the Superior Court for the counties of Providence and Bristol asking that the film be declared obscene and the applicant be permanently enjoined from exhibiting the film. *See Scuncio* v. *Columbus Theatre, Inc.,* 108 R. I. 613, 614, 277 A.2d 924, 925, n. 1 (1971).

The case was heard before a trial justice sitting without a jury. Each of the plaintiffs testified at that hearing. In addition plaintiffs presented the testimony of three other witnesses who had viewed the film. One was the amusement inspector of the city of Providence. Another was a member of the Film Classification Board of the State of Rhode Island. The plaintiffs' last witness was a social scientist.

The plaintiffs endeavored to prove by their own testimony and that of their other witnesses that the challenged film was obscene in a constitutional sense under the *Roth-Memoirs* standards. In the cases of *Roth* v. *United States* and *Alberts* v. *California*, 354 U. S. 476, 77 S. Ct. 1304, 1 L.Ed.2d 1498 (1957), decided together, the Supreme Court was called upon to decide whether obscenity is within the area of constitutionally protected speech or press. A majority of the Court, in holding that obscenity is not entitled to constitutional protection, attempted to indicate what material is actually obscene. They said that material is obscene if " * * * to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." *Id.* at 489, 77 S.Ct. at 1311, 1 L.Ed.2d at 1509.

The *Roth* definition has been elaborated in subsequent cases.[3] In 1966 a decision was rendered in the case of *A Book Named "John Cleland's Memoirs of a Woman of Pleasure"* v. *Massachusetts*, 383 U. S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1. A majority of the Supreme Court could not subscribe to any one opinion. Six justices were in favor

---

[3]See *Shipyard Drive-In-Theatre, Inc.* v. *Scuncio*, 107 R. I. 554, 564-65, 268 A.2d 820, 827 (1970); *see also In re Seven Magazines*, 107 R. I. 540, 544, 268 A.2d 707, 709 (1970).

of reversal for reasons set forth in four separate opinions.[4] There was clearly no majority opinion. In the opinion written by Mr. Justice Brennan, in which Chief Justice Warren and Mr. Justice Fortas joined, the justices expressed the view that the definition of obscenity, set forth in the *Roth* and *Alberts* decisions, requires the coalescence of three distinct elements as a condition precedent to the proscription of any expression. These elements[5] are set forth in the *Memoirs* case as follows:

> " * * * it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." *Id.* at 418, 86 S.Ct. at 977, 16 L.Ed.2d at 5, 6.

The justices also said that "Each of the three federal constitutional criteria is to be applied independently * * *."

After plaintiffs rested, defendant made a motion to dismiss on the ground that plaintiffs had failed to sustain their burden of proving that the questioned film was obscene in a constitutional sense. The trial justice denied this motion.

In support of its position that the film was not obscene in a constitutional sense, defendant presented four witnesses. The first witness was a neuropsychiatrist; the second was the distributor of the film involved in this case; the third was an officer and stockholder of defendant cor-

---

[4]Mr. Justice Black and Mr. Justice Stewart concurred in the reversal for the reasons stated in their respective dissenting opinions in *Ginzburg* v. *United States,* 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966); *Mishkin* v. *New York,* 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966).

[5]*See In re Seven Magazines,* 107 R. I. 540, 543, 268 A.2d 707, 709 (1970), where the court points out that these tests, somewhat amplified, were delineated by the Legislature in §11-31.1-7 as preconditions to an adjudication of obscenity.

poration; the fourth was the theatre-arts editor of a local newspaper.

We do not believe it is necessary to refer in any detail to the testimony of the witnesses who appeared for the opposing parties; nor, in view of our ultimate decision, need we discuss any of the scenes depicted in the film, a synopsis of which has been furnished by defendant together with its briefs.[6] It is sufficient merely to summarize the conflicting testimony as follows. The testimony of plaintiffs and their witnesses purports to establish that (a) the dominant theme of the film taken as a whole appeals to a prurient interest in sex; (b) that it is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) that the film is utterly without redeeming social value. The defendant's witnesses, on the contrary, attempted to show just the opposite.

In his decision, which he rendered from the bench, the trial justice stated that he did not think this film was the hard-core pornography which Mr. Justice Stewart spoke about in his concurring opinion in *Jacobellis* v. *Ohio*, 378 U. S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964),[7] but he

---

[6]This synopsis consists of a continuity of still pictures and legends depicting and describing the various scenes in the film.

[7]In that concurrence Mr. Justice Stewart wrote:
  "I have reached the conclusion, which I think is confirmed at least by negative implication in the Court's decisions since *Roth* and *Alberts,* that under the First and Fourteenth Amendments criminal laws in this area are constitutionally limited to hard-core pornography. I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that." *Jacobellis* v. *Ohio* at 197, 84 S.Ct. at 1683, 12 L.Ed.2d at 803.

observed that it was not far from it. In addressing himself to defendant's argument that the bureau did not apply national standards, he said:

> "I am concerned with the argument made by the defendant that the plaintiff didn't nail down what 'National Standards' are. Perhaps the City's case may be a little thin, but even if somebody says he knows what 'National Standards' are, can he define what they are at any given time? Could anyone?"

Although he did not find the film to be hard-core pornography, he did hold it was obscene and he specifically found that the dominant theme of the material taken as a whole appeals to prurient interests in sex; that the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and that material is utterly without redeeming social value. Accordingly, he granted plaintiffs' prayer for a permanent injunction.

Initially, defendant challenges the trial justice's finding relative to the evaluation of community standards. The trial justice expressly stated in his decision that he was not applying a national standard. As we have already pointed out, he said he did not think there was a national standard. While we agree with the trial justice's feeling that it may be difficult to define what national standards are, nonetheless we are bound by the prior decisions of the United States Supreme Court and of this court which hold " * * * the constitutional status of an allegedly obscene work must be determined on the basis of a *national* standard." (italics ours) *Id.* at 195, 84 S.Ct. at 1682, 12 L.Ed.2d at 802; *Scuncio* v. *Columbus Theatre, Inc.,* 108 R. I. 613, 615, 277 A.2d 924, 925 (1971); *In re Seven Magazines,* 107

---

*See also* Mr. Justice Stewart's dissent in *Ginzburg* v. *United States,* 383 U.S. 463, 499, 86 S.Ct. 942, 957, 16 L.Ed.2d 31, 54 (1966), where he spoke about " * * * a distinct and easily identifiable class of material in which all of these elements coalesce" and then went on to describe such materials.

R. I. 540, 544, 268 A.2d 707, 709 (1970). The trial justice's failure to evaluate the contemporary community standards on the basis of national standards was error.

Thus, it becomes our duty to make an independent constitutional judgment on a mixed question of law and fact as to whether the film involved in this case is obscene. *Jacobellis* v. *Ohio, supra* at 190, 84 S.Ct. at 1679, 12 L.Ed.2d at 799; *Scuncio* v. *Columbus Theatre, Inc., supra* at 615, 277 A.2d at 926. Ordinarily we would view the film and then determine, on the basis of the record made in the trial court and of our viewing of the film, applying controlling constitutional standards, whether it is obscene.

However, under the circumstances of this case, we do not deem it necessary to view the film because it is readily apparent that the bureau has not presented the evidence necessary to sustain its burden and we reverse because in our judgment the bureau has failed to prove its case. As we stated above the three elements described in *Memoirs* must coalesce. In *In re Seven Magazines, supra,* we held that it is essential that expert testimony be presented to a court or jury as it seeks to determine whether the material before it violates "contemporary community standards." *See Scuncio* v. *Columbus Theatre, Inc., supra.* In the case at bar the bureau had the burden of proving that this film violated the *Roth-Memoirs* standards. Specifically, it had the burden of proving that this film violated "contemporary community standards" and the only way it could do so was to present evidence that the film violated *national* community standards. This it has failed to do. The bureau presented no evidence that purported to establish that this film affronted any national community standard. On this record, therefore, we cannot find that it violates a national community standard. Nor can we find that this film is obscene under any of the views ex-

pressed in *Redrup* v. *New York,* 386 U. S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967).

The defendant's appeal is sustained and the judgment appealed from is reversed.

*Robert J. McOsker* City Solicitor, *Steven S. Saber,* Asst. City Solicitor, for plaintiffs.

*Abedon, Michaelson, Stanzler & Biener, Milton Stanzler, Richard A. Skolnik,* for defendant.