[Civ. No. 16316. First Dist., Div. One. May 27, 1955.]

VINCENT R. CARUSO et al., Appellants, v. C. L. ABBOTT et al., Respondents.

Long & Levit, Bert W. Levit, George England and David
C. Bogert for Appellants.

Francis W. Collins, District Attorney, Tinning & DeLap
and T. H. DeLap for Respondents.

DRAPER, J. pro tem.*—General and special demurrer to
amended complaint was sustained without leave to amend.
Plaintiffs appeal from judgment entered upon this order.

Appellants are licensed funeral directors doing business in
Contra Costa County. They allege that respondent Abbott
(not a mortician) is coroner of that county, and that the
other 14 respondents are the owners of eight undertaking
establishments operating in the county.

The complaint alleges that 30 per cent of all deaths in
the county occur under circumstances which require signing
of a death certificate by the coroner, pursuant to Health and
Safety Code, section 10450, and charges that respondents have
conspired and combined to restrict trade and restrain com-
petition, particularly that of appellants, in the undertaking
business derived from such "coroner cases" in the county.

Appellants allege that to effect such restraint, respondents
have divided the county into districts and respondent coroner
has appointed one of respondents as the sole deputy in each
such district, in order to enable the mortician so appointed to
obtain all the funeral business of coroner cases in his district.

It is alleged that the bodies in all coroner cases in each
district are required to be brought to the funeral establish-
ment of the deputy coroner of that district for investigation
and examination. (Although alleged as an act in furtherance
of the conspiracy, this seems justified, if not required, by
Health and Safety Code, section 7102.) The gravamen of
the complaint, however, is that respondent deputies use the
custody thus acquired, through a series of acts and practices

*Assigned by Chairman of Judicial Council.

(at least some of which appear to be contrary to the statutory regulations prescribed for the mortuary business), to secure the funeral business in such cases for themselves and to exclude appellants therefrom, even in cases where next of kin have designated appellants to perform such services.

It is then alleged that appellants have "lost to" respondent deputies the funeral business of "numerous coroner cases to which (appellants) were summoned by relatives, families or next of kin, by peace officers or by others" and have been otherwise injured in their business, to their damage in the sum of $60,000.

The first count is asserted to be a cause of action under the Cartwright Act (Bus. & Prof. Code, §§ 16700-16758) and appellants seek twofold damages. The second count, based upon the same facts, seeks a recovery for unfair competition and restraint of trade under common law rules. The third count also incorporates the allegations of the first, and alleges that the acts of respondents, done in their official capacities, constitute a denial of due process and equal protection of the laws, in violation of the Fourteenth Amendment.

Appellants pray for damages and for injunction. At argument on the demurrer, counsel for plaintiffs specifically requested leave to further amend the complaint.

Respondents pleaded the statute of limitations as a ground of demurrer, but, in their brief, disclaim reliance upon that ground as a defense to the acts alleged to have been done within three years before filing the complaint.

Respondents' principal contention is that each cause of action "has for its foundation the acts of the coroner and his deputies acting for him and performed as public officers." Except for this issue, no serious question is raised that a cause of action is stated under the Cartwright Act, as well as for violation of the common law rights against restraint of trade. (*Speegle* v. *Board of Fire Underwriters*, 29 Cal.2d 34 [172 P.2d 867].)

Respondents assert that, as public officers, they are exempt from personal liability in damages for acts done by them in the performance of their official duties. They cite *County of San Mateo* v. *Maloney*, 71 Cal. 205 [12 P. 53]; *Porter* v. *Haight*, 45 Cal. 631; *Downer* v. *Lent*, 6 Cal. 94 [95 Am.Dec. 489]; *People* v. *Standard Acc. Ins. Co.*, 42 Cal.App.2d 409 [108 P.2d 923]; and *Jones* v. *Richardson*, 9 Cal.App.2d 657 [50 P.2d 810]. These cases do establish that where the law vests in a public officer discretion to act or refrain from

action, he will not be held personally liable for error or negligence in the exercise of that discretion.

But substantially all these decisions contain language limiting the rule to acts done without malice or corruption, and within the scope of the authority conferred by law.

In a related field, it has long been the rule that officers exercising judicial functions are exempt from personal liability to those asserting loss by reason of their decisions, and that even the allegation of malice does not restrict this exemption. (*Bradley* v. *Fisher,* 13 Wall. (U.S.) 335 [20 L.Ed. 646] ; *Turpen* v. *Booth,* 56 Cal. 65 [38 Am.Rep. 48].) This rule has been extended to quasi-judicial functions. (*Wilson* v. *Sharp,* 42 Cal.2d 675 [268 P.2d 1062] ; *White* v. *Brinkman,* 23 Cal.App.2d 307 [73 P.2d 254] ; *Pearson* v. *Reed,* 6 Cal.App. 2d 277 [44 P.2d 592].)

Respondents cite *People* v. *Devine,* 44 Cal. 452; *Gray* v. *Southern Pac. Co.,* 21 Cal.App.2d 240 [68 P.2d 1011] ; and *Huntly* v. *Zurich General A. & L. Ins. Co.,* 100 Cal.App. 201 [280 P. 163] for the rule that a coroner acts in a judicial capacity in holding an inquest. But the allegations of the amended complaint here do not relate to inquests, and there seems little reason to hold that a coroner or his deputies act in a judicial or quasi-judicial capacity as to the matters which are the basis of this complaint.

Although not referred to in the briefs, well established rules of law place definite limitations upon a public officer's exemption from personal liability.

Police officers are personally liable in damages for false imprisonment. (*Hughes* v. *Oreb,* 36 Cal.2d 854 [228 P.2d 550] ; *Oppenheimer* v. *City of Los Angeles,* 104 Cal.App.2d 545 [232 P.2d 26] ; *Collins* v. *Jones,* 131 Cal.App. 747 [22 P.2d 39].) These decisions make it clear that acts in excess of the authority of a police officer render him personally liable, even though he purports to act in his official capacity.

In *Coyne* v. *Nelson,* 107 Cal.App.2d 469, 475 [237 P.2d 45], a police officer was held liable in both compensatory and punitive damages upon evidence that he "without good faith imprisoned respondent for the purpose of aiding in the extortion of money from him."

*Kaufman* v. *Brown,* 93 Cal.App.2d 508, 514 [209 P.2d 156], suggests strongly that an officer's unreasonable delay in taking a prisoner before a magistrate renders the officer personally liable "regardless of the lawfulness of the arrest in the first instance."

A police officer has been held personally liable for damages for battery committed in the course of an arrest made by him while on duty. (*Appier* v. *Hayes,* 51 Cal.App.2d 111 [124 P.2d 125].)

A sheriff who lawfully acquires custody of property under writ of attachment is liable in damages to a third party claimant whose rights are ignored in the sale of such property under execution. (*Thompson* v. *Byers,* 116 Cal.App. 214 [2 P.2d 496].)

In *Withington* v. *Shay,* 47 Cal.App.2d 68 [117 P.2d 415, 119 P.2d 1], a sheriff sold property under decree ordering foreclosure of mechanic's liens. The decree made no provision for disposition of any surplus over the amount necessary to satisfy the liens. There was a surplus, execution was levied upon it, and the sheriff paid such surplus to the execution creditor. Judgment in favor of beneficiaries of a trust deed against the sheriff, as well as the execution creditor, was affirmed.

It is apparent that respondent deputies cannot claim exemption from liability for misusing or exceeding their authority in respect to bodies coming into their custody in their official capacity. The mere fact that they acquire such custody lawfully, and as public officers, does not exempt them from personal responsibility for subsequent unauthorized abuse of that authority.

The allegations here are that respondents, to permit respondent deputies to monopolize the funeral business of "coroner cases" in their county, combined to, and did, misuse their official authority to further their private business interests. The complaint alleges, in part, that respondent deputies, having obtained custody of bodies in their official capacity, "delay the performance of their duties as deputy coroners in coroner cases while they attempt to secure such funeral business for themselves"; that they "delay the release of bodies to morticians who are not deputy coroners but who have been designated by the . . . next of kin to . . . make funeral arrangements"; and that they "perform services on bodies which are in their possession as deputy coroners without permission . . . contrary to the . . . instructions of . . . next of kin."

These allegations are somewhat qualified, and they lack the directness and precision which is to be expected in pleading. Appellants assert their intent to allege specifically that all these acts are wholly outside any official duty of respondents,

and are done solely to secure private business for respondent deputies.

However imperfectly, these allegations assert that respondents acted for private gain, and not in the discharge of their public duties. If these allegations be true, as we must assume on this appeal, respondents did not merely err in the performance of their public duties; rather, they deliberately disregarded the limits of their official authority, and did so solely for private gain.

The true basis for the rule exempting an officer from personal liability is that he should not suffer personally where, in his official capacity, he exercises a discretion which his public office requires him to exercise. Implicit in this reasoning is the requirement that his discretion be exercised in his public capacity and within the scope of his official authority. If a group of officials conspire to exceed their authority, even to the point of violation of express statutes governing their conduct, and for the sole purpose of their private business advantage, they cannot reasonably expect extension of the shelter of official immunity to their acts.

We do not hold that the complaint is good as against special demurrer. The allegations that respondent deputies "pursue their investigations . . . in such a way as to embarrass . . . next of kin," and that they "subject reputable licensed physicians to harassment," have no apparent connection with any claim of appellants against respondents.

Nor do we suggest or speculate that the allegations are susceptible of proof. We are concerned here only with the pleading. Sufficient facts are alleged to entitle appellants to attempt amendments which would set out, with definiteness and particularity, the causes of action upon which they rely. "The question presented is whether the plaintiffs under any view of the facts disclosed have stated or can state a cause of action for relief as against the defendants." (*Simpson* v. *Gillis*, 1 Cal.2d 42, 49 [32 P.2d 1071].)

Since judgment, respondent Abbott has retired as coroner. On the authority of *United States ex rel. Lewis* v. *Boutwell*, 17 Wall. (U.S.) 604 [21 L.Ed. 721], appellants concede that there can now be no injunction against him. The stipulation of the parties does not cover the situation of the deputies, and we are not judicially informed whether they have been reappointed. But the essence of plaintiffs' cause of action, so far as it seeks an injunction, is a conspiracy based upon the coroner's power to appoint and retain named

deputies. Clearly that has ceased with the coroner's retirement, and there is no field for the necessarily prospective operation of an injunction.

We have entertained doubt as to the right to maintain an action in the courts of this state for damages only, under the third count (denial of due process and equal protection of the law). There is room for the view that the Civil Rights Statute (42 U.S.C.A. § 1983) establishes a cause of action for damages cognizable only in the federal courts. However, since this point is not raised by the parties, we do not pass upon it here.

The judgment is reversed, with directions to the trial court to grant plaintiffs leave to amend their amended complaint.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied June 24, 1955, and respondents' petition for a hearing by the Supreme Court was denied July 20, 1955.