[Civ. No. 46133. Second Dist., Div. One. Apr. 1, 1976.]

KENNETH GOULD et al., Plaintiffs and Appellants, v.
THE PEOPLE et al., Defendants and Respondents.

## COUNSEL

Burton Marks and Alan H. Russell for Plaintiffs and Appellants.

John H. Larson, County Counsel, John P. Farrell, Deputy County Counsel, Burt Pines, City Attorney, and Ward G. McConnell, Deputy City Attorney, for Defendants and Respondents.

## OPINION

HANSON, J.—

### THE CASE

Plaintiffs-appellants Kenneth Gould, Lewis Kaufman and Maklo Corporation (hereinafter plaintiffs) brought an action in the form of a taxpayer's suit pursuant to Code of Civil Procedure section 526a to enjoin defendants-respondents from prosecuting certain obscenity cases brought against them under Penal Code section 311.2 and seeking to have defendants reimburse the city and county for moneys expended in prosecuting the cases.

The plaintiffs named as defendants in the complaint the People of the State of California and certain governmental officers in their official

capacities, namely: Joseph P. Busch,[1] District Attorney for the County of Los Angeles; Burt Pines, City Attorney for the City of Los Angeles; Edward Davis, Chief of Police for the City of Los Angeles; Peter J. Pitchess, Sheriff of the County of Los Angeles; Alfred J. McCourtney,[2] Presiding Judge of the Superior Court of the County of Los Angeles; and Joan Dempsey Klein,[3] Presiding Judge of the Municipal Courts of the Los Angeles Judicial District.

Plaintiffs alleged that they were engaged in the business of printing written and pictorial matter and were charged with a felony, still pending in the superior court (case No. A 124 672), namely, the violation of Penal Code section 182 by conspiring to violate Penal Code section 311.2 (sale or distribution of obscene matter),[4] and that they were also charged with two misdemeanors under the obscenity statute in the municipal court (case Nos. 31 432 067 and 31 432 625), and although the municipal court cases were dismissed in that court, the city attorney appealed the dismissals. Plaintiffs alleged that since on June 4, 1974, a three-judge federal court panel in the United States District Court, Central District of California, in the case of *Miranda* v. *Hicks* (1974) 388 F.Supp. 350, held the California Penal Code section 311.2 unconstitutional in violation of the First and Fourteenth Amendments to the United States Constitution, that the continued prosecution of the above referred to criminal cases constituted an illegal expenditure of public funds.

Plaintiffs in the instant action appeal from the lower court's granting of defendants' demurrer without leave to amend and dismissal of their complaint in October 1974.

## Issues

The issues raised on appeal are (1) whether or not Penal Code section 311.2 is unconstitutional and void in that it violates the First Amendment of the United States Constitution and the equal protection clause of the Fourteenth Amendment; and (2) whether or not a taxpayer's action

---

[1]Deceased.

[2]Deceased.

[3]Presently serving on the superior court.

[4]The information, filed December 27, 1973, alleged that overt act No. 3 for the purpose of carrying out the objects and purposes of the conspiracy plaintiffs had in their possession at their place of business "eleven pallets and stacks of printed material, each pallet and stack containing approximately 4,000 sheets showing sex acts including sodomy, sexual intercourse, masturbation and oral copulation."

pursuant to Code of Civil Procedure section 526a can be maintained against the judges named as defendants.

## DISCUSSION

*Is Penal Code Section 311.2 (hereinafter section 311.2) Unconstitutional and Void in That It Violates the First Amendment of the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment?*

Section 311.2 enacted by the California Legislature in 1961, as amended by statutes 1968 and 1969 provides:

"(a) Every person who knowingly sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state possesses, prepares, publishes, or prints, with intent to distribute or to exhibit to others, or who offers to distribute, distributes, or exhibits to others, any obscene matter is guilty of a misdemeanor.

"(b) The provisions of this section with respect to the exhibition of, or the possession with intent to exhibit, any obscene matter shall not apply to a motion picture operator or projectionist who is employed by a person licensed by any city or county and who is acting within the scope of his employment, provided that such operator or projectionist has no financial interest in the place wherein he is so employed."

Penal Code section 311 (hereinafter section 311) enacted in 1961, as amended in 1969 and 1970, defines "obscene matter," referred to in section 311.2, as "matter, taken as a whole, the predominant appeal of which to the average person, applying contemporary standards, is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion; and is matter which taken as a whole goes substantially beyond customary limits of candor in description or presentation of such matters; and is matter which taken as a whole is utterly without redeeming social importance."[5]

---

[5]This statutory definition was derived from the language of the United States Supreme Court in the landmark case of *Roth* v. *United States* (1957) 354 U.S. 476 [1 L.Ed.2d 1498, 77 S.Ct. 1304], as amplified in *Memoirs* v. *Massachusetts* (1966) 383 U.S. 413 [16 L.Ed.2d 1, 86 S.Ct. 975]—*Roth* presumed "obscenity" to be utterly without "redeeming social importance" (p. 484), and *Memoirs* required that to prove obscenity it must be affirmatively established that the material is "utterly without redeeming social value." (P. 418.)

## BACKGROUND

We trace the tortured odyssey of the California obscenity statute (§ 311 et seq.) through the California and federal court systems as it was buffeted by and withstood constitutional attack. The following key cases pertinent to the case at bench and their holdings are listed chronologically:

In June 1973 the United States Supreme Court handed down its opinion in *Miller* v. *California* (1973) 413 U.S. 15 [37 L.Ed.2d 419, 93 S.Ct. 2607] (hereinafter *Miller I*). The case was one of a group of "obscenity-pornography" cases reviewed by the Court in its reexamination of cases involving what it referred to as "the intractable obscenity problem." Defendant Miller had been convicted of violation of section 311.2 after a jury trial in Orange County, California. The conviction was affirmed by the appellate department of the superior court. The defendant's conduct consisted of mailing unsolicited brochures advertising four books entitled "Intercourse," "Man-Woman," "Sex Orgies Illustrated," and "An Illustrated History of Pornography," and a film entitled "Marital Intercourse." While the brochures contained some descriptive printed material, primarily they consisted of pictures and drawings very explicitly depicting men and women in groups of two or more engaging in a variety of sexual activities, with genitals often prominently displayed.

The high court recognized that the states have a legitimate interest in prohibiting the dissemination or exhibition of obscene materials and set about to define the standards which must be used to identify obscene material without infringing on First Amendment rights. The Court said at page 24: "The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois* v. *Wisconsin, supra,* at 230, quoting *Roth* v. *United States, supra,* at 489; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the *'utterly* without redeeming social value' test of *Memoirs* . . . ." (Original italics.)

The *Miller I* court set forth at page 25 a few plain examples of what a state court could define for regulation under part (b) of the above standard as:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions and lewd exhibition of the genitals."

The court capsulized its holding at pages 36-37 by stating: "In sum, we (a) reaffirm the *Roth* holding that obscene material is not protected by the First Amendment; (b) hold that such material can be regulated by the States, subject to the specific safeguards enunciated above, without a showing that the material is '*utterly* without redeeming social value'; and (c) hold that obscenity is to be determined by applying 'contemporary community standards'. . . ." (Original italics.) The court emphasized that it was not its function to impose regulatory schemes for the states as that was the legislative function of each state. It held that in order for an obscenity statute to have constitutional validity, the proscribed matter must be specifically defined by applicable state law, as written or authoritatively construed, and remanded the case back to the Orange County court from which it emanated for further proceedings not inconsistent with the First Amendment standards it established by the opinion.

In August 1973 the California Court of Appeal rendered its decision in *People* v. *Enskat* (1973) 33 Cal.App.3d 900 [109 Cal.Rptr. 433]. Enskat was convicted by a municipal court jury of exhibiting an obscene motion picture entitled, "The Collection," in violation of section 311.2. On certification by the appellate department of the superior court, the Court of Appeal affirmed the judgment of conviction. The court, after a careful analysis of *Miller I,* concluded that *Miller I* eased the prosecutorial burden of proving obscenity and did not hold the California obscenity statute unconstitutional because it imposed a stricter standard, and that there was no constitutional reason why the statute as written could not be applied as construed by the California cases as prohibiting any "hard core" pornography.

Enskat's petition for a hearing by the California Supreme Court was denied in October 1973 and certiorari was denied by the United States Supreme Court. (*Enskat* v. *California* (1974) 418 U.S. 937 [41 L.Ed.2d 1172, 94 S.Ct. 3225].)

In June 1974 a three-judge federal court of the Central District of California rendered its opinion in *Miranda* v. *Hicks, supra,* 388 F.Supp. 350, relied on by plaintiffs-appellants herein.

The *Miranda* case, also emanating from Orange County, California (as did *Miller I, supra,* and *Miller II, infra*), involved an action brought by Vincent Miranda, dba Walnut Properties and Pussycat Theatre, Hollywood, a California corporation, against Cecil Hicks, District Attorney of Orange County, and officers of the Buena Park Police Department concerning the movie "Deep Throat." A municipal court judge viewed the film and subsequently film and cash proceeds were seized pursuant to search warrants.

Miranda's complaint sought return of the film "Deep Throat" and cash proceeds seized and a declaratory judgment that the California obscenity statutes were unconstitutional.

The three-judge federal court refused to apply the doctrine of abstention on the ground there was no pending prosecution and analyzed and disagreed with *Enskat,* and held that the California obscenity statute (§ 311 et seq.) was unconstitutional, stating at page 359: "In summary, we find (1) the California obscenity statute as written does not meet the specificity test of *Miller* and (2) the California courts, in interpreting the statute may have liberalized it beyond its wording but have not specifically construed it so as to give fair notice as to what is constitutionally prohibited."

The court ordered the return of all copies of "Deep Throat" which had been seized and ordered the officials to refrain from making additional seizures.

In July 1974 the United States Supreme Court was faced with *Miller* v. *California* (1974) 418 U.S. 915 [41 L.Ed.2d 1158, 94 S.Ct. 3206] (hereinafter *Miller II*) after the appellate department of the superior court on its remand from the United States Supreme Court again affirmed the judgment of conviction, citing *Enskat.* The United States Supreme Court dismissed the appeal "for want of a substantial federal question."

In its supplemental memorandum opinion in *Miranda* v. *Hicks, supra,* 388 F.Supp. 350, filed September 30, 1974, the three-judge federal district court sought to justify its failure to dismiss the action under the

abstention doctrine, noting "inferences of bad faith" on the part of the prosecutors and police and "prosecutorial misconduct," and stating it did not "attach plenary precedential value" on *Miller II*. It reaffirmed its judgment that the California obscenity statute was invalid under the federal Constitution.

In June 1975 the United States Supreme Court reversed the judgment of the three-judge federal court in *Miranda* v. *Hicks, supra*, in *Hicks* v. *Miranda* (1975) 422 U.S. 332 [45 L.Ed.2d 223, 95 S.Ct. 2281].

The high court held that the district court erred in ignoring its decision in *Miller II* as it "was an appeal from a decision by a state court upholding a state statute against federal constitutional attack" (*Hicks* v. *Miranda, supra*, 422 U.S. at pp. 343-344 [45 L.Ed.2d at p. 236]) and " 'dismissal for want of a substantial federal question, is a disposition on the merits.' "

The court also held that the district court committed error in not dismissing the *Miranda* case because of its posture in the state court system, pointing out that the rule of abstention is designed to permit state courts to try state cases free from interference by federal courts (citing *Younger* v. *Harris* (1971) 401 U.S. 37 [27 L.Ed.2d 669, 91 S.Ct. 746]), particularly where the party to the federal case may fully litigate his claim before the state court.

The Supreme Court held the district court also committed error by concluding that extraordinary circumstances existed in the form of official harassment and bad faith which justified not dismissing the case and deciding the matter on its merits. In this regard, the Supreme Court said: "The relevant findings of the District Court were vague and conclusory. There were references to the 'pattern of seizure' and to 'the evidence brought to light by the petition for rehearing'; and the unexplicated conclusion was then drawn that 'regardless of the nature of any judicial proceeding,' the police were bent on banishing 'Deep Throat' from Buena Park. Yet each step in the pattern of seizures condemned by the District Court was authorized by judicial warrant or order; and the District Court did not purport to invalidate any of the four warrants in any way to question the propriety of the proceedings in the Superior Court, or even to mention the reversal of the suppression order in the Appellate Department of that court. Absent at least some effort by the District Court to impeach the entitlement of the prosecuting officials to rely on repeated judicial authorization for their conduct, we

cannot agree that bad faith and harassment were made out. Indeed, such conclusion would not necessarily follow even if it were shown that the state courts were in error on some one or more issues of state or federal law." (*Hicks* v. *Miranda, supra,* 422 U.S. at pp. 350-351 [45 L.Ed.2d at pp. 239-240].)

In February 1976 the California Supreme Court in *Bloom* v. *Municipal Court* (1976) 16 Cal.3d 71 [127 Cal.Rptr. 317, 545 P.2d 229], affirmed the trial court's denial of plaintiff's petition for a writ of prohibition in which he sought to restrain the municipal court from proceeding on a complaint charging him with custody of an allegedly obscene film in violation of section 311.2, subdivision (a).

The court, having previously denied a hearing in *Enskat,* expressly approved the *Enskat* decision and held the California obscenity statute satisfied the requirements of *Miller I,* the statute having been "authoritatively construed" to be limited to patently offensive representations or descriptions of specific "hard core" pornography depicting ultimate or simulated sexual acts, masturbation, excretory functions and lewd exhibitions of the genitals. The court held the California obscenity statute, as construed, was not so vague as to deny due process of law and did not violate constitutional guarantees of individual liberty and freedom of speech and press.

The court also pointed out that the "fair notice" argument found persuasive by the three-judge court in *Miranda* v. *Hicks* in June of 1974 had previously been rejected by the United States Supreme Court with regard to an equivalent federal obscenity statute in *Hamling* v. *United States* (1974) 418 U.S. 87 [41 L.Ed.2d 590, 94 S.Ct. 2887].

### The Case at Bench

Turning to the case at bench, plaintiffs' reliance on the three-judge federal district court's opinion in *Miranda* v. *Hicks, supra,* 388 F.Supp. 350, is misplaced. The court below correctly granted defendants' demurrer without leave to amend and dismissed the complaint for the following reasons:

■ *First:* In the instant case the rule of *stare decisis* demanded that the court below follow the decision in *People* v. *Enskat, supra,* upholding the constitutionality of section 311.2, nnd not the federal district court case of *Miranda* v. *Hicks, supra,* which was inapposite because "[t]he

decisions of the Supreme Court and Court of Appeal are binding and must be accepted by the trial courts [citation]. The rule of *stare decisis* is a rule of jurisdiction [citation]." (*Wood* v. *Superior Court* (1974) 36 Cal.App.3d 811, 814 [112 Cal.Rptr. 157].) Moreover, although the California Supreme Court's denial of a hearing in *Enskat* could not be regarded as expressing approval of the propositions of law set forth in the opinion, the denial was not without significance to the Supreme Court's views.[6] (See *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167 [18 Cal.Rptr. 369, 367 P.2d 865].) Thus, at the time of the lower court's ruling in the instant case, the *Enskat* decision had emanated from a court of last resort in this state on the issues raised and was controlling until disapproved by the California Supreme Court or until changed by legislative action. (See *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513]; *Cole* v. *Rush* (1955) 45 Cal.2d 345 [289 P.2d 450, 54 A.L.R.2d 1137].) The California Supreme Court denied a hearing on *Enskat* and expressly approved that decision in *Bloom* (February 1976).

*Second, and foremost:* The three-judge federal court case of *Miranda* v. *Hicks, supra,* 388 F.Supp. 350, holding the California obscenity statute unconstitutional, relied on by plaintiffs herein, has itself been overruled by the United States Supreme Court in *Hicks* v. *Miranda, supra,* 422 U.S. 332. Moreover, the California Supreme Court in *Bloom* v. *Municipal Court, supra,* 16 Cal.3d 71, held that the statute as "authoritatively construed" meets the standards set by *Miller I* and is neither unconstitutionally vague nor a denial of freedom of speech.

### EQUAL PROTECTION CLAUSE

Plaintiffs finally contend, in respect to the constitutionality of section 311.2, that it violates the equal protection clause of the Fourteenth Amendment[7] in that motion picture projectionists are exempt from punishment. Plaintiffs theorize that since the section involves First Amendment freedoms, "fundamental interests" come into play and thus

---

[6]The California Supreme Court in *People* v. *Bradley* (1969) 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129], recognized that lower federal district court decisions are persuasive and entitled to great weight, but said at page 86 that "although we are bound by decisions of the United States Supreme Court interpreting the federal Constitution [citations], we are not bound by the decisions of the lower federal courts even on federal questions."

[7]The Fourteenth Amendment to the federal Constitution provides in part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

the "strict scrutiny" test is applicable. ■ This contention is also without merit.

California "[c]ase law has developed a two-level standard in evaluating legislative classifications under the 'equal protection' clause. The traditional test is that there is a presumption of constitutionality which will not be overthrown by the courts unless it is palpably arbitrary and beyond rational and reasonable doubt erroneous and no set of facts reasonably can be conceived that would sustain it. This traditional test is usually applied to 'economic' regulations.

"The other, and stricter, standard is employed in cases involving 'suspect classifications' or 'fundamental interests.' Here, the courts take a close look at the classification and require not only a *compelling* state interest which justifies the law, but also that the distinctions drawn by the law are *necessary* to further its purpose. (*In re Antazo,* 3 Cal.3d 100 [89 Cal.Rptr. 255, 473 P.2d 999]; *California State Employees' Assn.* v. *Flournoy,* 32 Cal.App.3d 219 [108 Cal.Rptr. 251].)" (*Alex* v. *County of Los Angeles* (1973) 35 Cal.App.3d 994, 1000-1001 [111 Cal.Rptr. 285].)

It would be academic to analyze whether section 311.2 falls in the category of "economic" or "fundamental interest" or hybrid, and which standard should apply. We hold, applying the stricter standard,[8] that the exemption of projectionists is valid and does not violate the equal protection clause because it tends to promote rather than inhibit dissemination of speech as protected by the First Amendment which constitutes a compelling state interest justifying the classification.

*Can a Taxpayer's Suit Pursuant to Code of Civil Procedure Section 526a (hereinafter section 526a) Be Maintained Against Judges Named As Defendants?*

---

[8]Assuming, arguendo, the traditional test should be applied on the basis that obscene material is not protected by the First Amendment (*Miller I, supra*) and thus does not involve "fundamental interests" and the provision exempting projectionists who have no financial interest in the establishment has an "economic" flavor, then the statute is presumed constitutional and not violative of the equal protection clause. In that event, the rational and reasonable distinction between persons trafficking in "hard core" pornography for personal profit and salaried projectionist employees, as recognized by the Legislature, is obvious. The exception is neither palpably arbitrary nor beyond rational and reasonable doubt erroneous.

Since the obscenity statute has been held constitutional it is dispositive of this appeal. However, we hold section 526a[9] is inapplicable to the judicial officers named as defendants in the case at bench for the following reasons:

■ *First:* Without going into the "statewide" status of judicial officers,[10] inasmuch as the language of section 526a refers only to local officers,[11] to hold section 526a applicable to the judges named as defendants in the instant case would undercut the concept of judicial immunity and wash away the very foundation of an independent judiciary.

Here, plaintiffs seek not only injunctive relief but also damages by way of reimbursement for moneys expended in prosecuting the obscenity cases against them; this violates the age-old common law principle of judicial immunity which is absolutely essential to the very existence of the judicial office itself, since a judge could be neither respected nor independent if the motives for his official actions or his conclusions, no matter how erroneous, could be disputed. (See *Perry* v. *Meikle* (1951) 102 Cal.App.2d 602 [228 P.2d 17]; *Caruso* v. *Abbott* (1955) 133 Cal.App.2d 304 [284 P.2d 113]; 28 Cal.Jur.2d, Judges, § 22, Civil Liability, pp. 564-565.)

---

- [9]Section 526a provides in pertinent part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf. . . ."

[10]The organization and "functioning of the courts is a statewide and not a local matter and this power is specifically granted to the Legislature" by the state Constitution. (See *County of Madera* v. *Superior Court* (1974) 39 Cal.App.3d 665, 669 [114 Cal.Rptr. 283]; Cal. Const., art. VI, §§ 1-5.)

[11]We are aware that there are some cases which support taxpayers' suits against certain state officials at common law and pursuant to section 526a, but none against officials of the judicial branch of government. (See *Ahlgren* v. *Carr* (1962) 209 Cal.App.2d 248 [25 Cal.Rptr. 887]; *California State Employees' Assn.* v. *Williams* (1970) 7 Cal.App.3d 390 [86 Cal.Rptr. 305]; *Blair* v. *Pitchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 618, fn. 38 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].)

In *Ahlgren* v. *Carr, supra,* 209 Cal.App.2d 248, apparently not brought under section 526a, the court said at page 253: " 'The overwhelming acceptance of such suits is in keeping with the distrust of executive and administrative self-restraint in the use of the spending power and with the readiness to allow the courts to assume the role of arbiter in the governmental scheme.' " Clearly, the court did not construe the scope of taxpayers' suits against state officials at common law to include the judicial branch of government as it serves in the "role of arbiter in the governmental scheme" and itself has "built-in" procedures for appellate review.

■ *Second:* The case at bench does not fall within the declared purpose of a taxpayer's action under section 526a.

The California Supreme Court has said: "The primary purpose of [section 526a] . . . is to 'enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.' [Citation.]" (*Blair* v. *Pitchess, supra,* 5 Cal.3d at pp. 267-268.)

Here, plaintiffs apparently presuppose, without a showing, that there are a large number of persons with a strong interest in challenging the same issues raised here and have no standing in the courts. Arguendo, even if the obscenity statute had not been declared constitutional, all persons prosecuted thereunder would not only have standing, but also would have the speediest of remedies to challenge that system by demurrer to the information and by habeas corpus. Clearly, here, plaintiffs in the one felony and the two misdemeanor actions pending against them have standing and the entire judicial system, trial and appellate mechanism, is available to them to challenge the issues.

■ *Third:* The instant case constitutes a collateral attack by alleged taxpayers upon the correctness of the judges' actions in the three obscenity cases for which plaintiffs are being prosecuted. Neither section 526a nor the common law provides a basis for suits by collateral parties to determine the correctness of a judge's action in a particular case because to do so would violate the state Constitution.[12] (See *Farr* v. *Superior Court* (1971) 22 Cal.App.3d 60, 70 [99 Cal.Rptr. 342], cert. den., (1972) 409 U.S. 1011 [34 L.Ed.2d 305, 93 S.Ct. 430].) To hold otherwise would create the absurd and chaotic situation where an officious and irate stranger to any action with a personal ax to grind could file a collateral action against a judge under the guise of a taxpayer's suit contesting the outcome of any civil or criminal action in which he believed the trial court ruled erroneously.

*Fourth:* Judges have no power to initiate prosecutions and are required to hear cases that are properly filed, although the hearing be only to dismiss a case filed and prosecuted pursuant to an unconstitutional

---

[12]The judicial power of the state is vested in expressly designated appellate and trial courts. (Cal. Const., art. VI, §§ 1-5.) Only the Supreme Court and the courts of appeal have jurisdiction over an appeal from a superior court. (Cal. Const., art. VI, § 11.) The codes also provide specific remedies by way of writ or appeal, thereby excluding collateral suits in a court of equal dignity.

statute. In addition, injunctive relief is not available in the instant case as to the presiding judge of the superior or municipal court since the relief is apparently sought from the official actions of other judges of the same courts.

Accordingly, by reason of the foregoing, we hold that although the pruning knife of time has unfortunately removed a very able judge, Alfred J. McCourtney, from the bench, and Judge Joan Dempsey Klein no longer sits as presiding judge of the municipal court, having been elevated to the superior court, section 526a is inapplicable to the case at bench.

Since section 311.2 is constitutional, it is axiomatic that the instant action was also properly dismissed as to defendants the People of the State of California, District Attorney Joseph Busch (deceased); City Attorney Burt Pines; Sheriff Peter J. Pitchess; and Chief of Police Edward Davis, because "[a]n injunction cannot be granted . . . to prevent the execution of a public statute, by officers of the law, for the public benefit." (Civ. Code, § 3423.)

The order (of dismissal) is affirmed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied April 29, 1976.