404 A.2d 457.

STATE *vs.* RONALD LESIEURE *et al.*

JULY 17, 1979.

PRESENT: Joslin, Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J.   This case comes before us on two questions certified by the Superior Court for Kent County regarding the constitutionality of portions of G.L. 1956 (1969 Reenactment), chapter 31 of title 11. The defendants were charged with violating provisions of this chapter in an indictment returned by the Kent County Grand Jury charging that the defendants

> "knowingly have in their possession, books, magazines, pictures and other material which are obscene, for the purpose of sale and exhibition in violation of §11-31-1, G.L.R.I., 1956, as amended, (Reenactment of 1969)."

The defendants moved to dismiss the indictment on the grounds embodied in the following certified questions:

> "1. Is *Section 11-31-1,* of the *General Laws of Rhode Island,* as amended, invalid and void for impermissible vagueness and overbreadth in regulating First Amendment materials contrary to the specificity and particularity requirements of the *First* and *Fourteenth Amendments* and the fair notice requirements for Due

Process under the *Fourteenth Amendment* and the provisions of *Article 1, Section 10, Declaration of Rights in the Constitution of Rhode Island?*

"2. Do the exemptions, independently, as set forth in *Section 11-31-15* of the *General Laws of Rhode Island,* as amended immunizing the exempted class from the criminal penalties of *Section 11-31-1,* or in conjunction with the exempted classes as provided in *Section 11-31.1-6* and *11-31.1-7(e),* in the event *Section 11-31.1* et seq. is to be read in *para materia* [sic] with *Section 11-31-1* et seq. deny to a person the equal protection of the law contrary to the equal protection clause of the *Fourteenth Amendment* and *Article 1, Section 2* and Section 10 of *Declaration of Rights* in the *Constitution of Rhode Island* where the person charged,

A. Is not a member of the exempted class, and
B. Is not charged with conduct emanating from a theater premises?"

The statute which was in force at all times relevant to this indictment reads as follows:

"11-31-1. Circulation of obscene publications. — Every person, firm, corporation or association who shall knowingly import, print, publish, sell, lend, give away, advertise for sale, or distribute any book, magazine, pamphlet, ballad, printed paper, written material, print, picture, photograph, figment or other material *which is obscene,* or who shall knowingly introduce any such book, magazine, pamphlet, ballad, printed paper, written material, print, picture, photograph, figment or other material into the family of another or into any school or place of education, or who shall knowingly buy, procure, receive, or have in his possession any such book, magazine, pamphlet, ballad, printed paper, written material, print, picture, photograph, figment or other material either for the purpose of sale, exhibition, loan or circulation, or with intent to introduce the same into the family of another, or into any school or place of

education, shall be imprisoned for a term not to exceed two (2) years or shall pay a fine which shall not be more than one thousand dollars ($1,000) and not less than one hundred dollars ($100)." (Emphasis added).[1]

We consider first the certified question regarding the constitutionality of §11-31-1 under both the United States and Rhode Island Constitutions. The foregoing statute had remained basically unchanged since it was codified as G.L. 1896, ch. 281, §13. Thoroughout its slightly modified forms the statute had purported to proscribe and impose punishment for the circulation and distribution of obscene books, written material, prints, pictures or other materials. The statute had never contained a definition of the term "obscene."

The issue of obscenity received an authoritative national interpretation from the opinion of the Supreme Court in *Roth* v. *United States*, 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957). In that case a majority of the justices held that obscenity was not protected under the First and Fourteenth Amendendments to the United States Constitution against state or federal regulation or prohibition. The Court there defined obscenity as follows:

> " '. . . A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i.e., a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters . . .' " 354 U.S. at 487 n. 20, 77 S. Ct. at 1310 n. 20, 1 L. Ed. 2d at 1508 n. 20.

Although five members of the Court agreed on the foregoing definition in *Roth*, this abstract agreement was soon to disintegrate into a number of conflicting points of view. Within a decade after *Roth*, the justices might be grouped illlustratively as follows. Justices Black and Douglas asserted

---

[1] This statute was repealed in its entirety and reenacted with substantial changes by P.L. 1978, ch. 218.

consistently that neither state nor federal governments had the power to regulate any sexually oriented matter on the ground of obscenity. *See, e.g., Ginzburg* v. *United States,* 383 U.S. 463, 86 S. Ct. 942, 16 L. Ed. 2d 31 (1966) (dissenting opinions); *Jacobellis* v. *Ohio,* 378 U.S. 184, 84 S. Ct. 1676, 12 L. Ed. 2d 793 (1964) (concurring opinion); *Roth* v. *United States, supra* dissenting opinion). Mr. Justice Harlan believed that the federal government could only control distribution of "hard core" pornography, but that the states had more latitude under rationally established criteria to ban material which treated sex in a fundamentally offensive manner. *Jacobellis* v. *Ohio, supra* (dissenting opinion). Mr. Justice Stewart regarded "hard core" pornography as the only type of obscenity which would be subject to proscription by either state or federal law. He observed:

> "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it* * *." *Jacobellis* v. *Ohio,* 378 U.S. at 197, 84 S. Ct. at 1683, 12 L. Ed. 2d at 803-04 (concurring opinion).

In the same case Mr. Justice Brennan in an opinion in which Mr. Justice Goldberg joined suggested that the limits of the candor of expression of an allegedly obscene work must be determined on the basis of a national standard, *id.* at 195, 84 S. Ct. at 1682, 12 L. Ed. 2d at 802, while Chief Justice Warren with whom Mr. Justice Clark joined in dissenting asserted that obscenity is to be defined by reference to community standards—not a national standard. He observed that "there is no provable 'national standard' and perhaps there should be none." *Id.* at 200, 84 S. Ct. at 1685, 12 L. Ed. 2d at 805. Justice White concurred only in the judgment as opposed to the rationale in *Jacobellis.*

Later in *Memoirs* v. *Massachusetts,* 383 U.S. 413, 86 S. Ct. 975, 16 L. Ed. 2d 1 (1966) a plurality of the Court consisting of Justice Brennan, chief Justice Warren and Justice Fortas enunciated a modification of the *Roth* test of obscenity.

Under the new test the presence of three elements which were required to coalesce was a prerequisite to establishing that material was obscene and therefore subject to a governmental control:

> "[I]t must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." *Id.* at 418, 86 S. Ct. at 977, 16 L. Ed. 2d at 5-6.

At no time, however, did a majority of the Court embrace this formulation. *See Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49, 82, 93 S. Ct. 2628, 2646, 37 L. Ed. 2d 446, 472 (1973) (Justice Brennan, dissenting opinion). In the face of this divergence of opinion as exhibited in the foregoing cases, as well as in *Ginzburg* v. *United States, supra,* and in *Mishkin* v. *New York,* 383 U.S. 502, 86 S. Ct. 958, 16 L. Ed. 2d 56 (1966), the Court proceeded to adopt a new ad hoc technique. In *Redrup* v. *New York,* 386 U.S. 767, 87 S. Ct. 1414, 18 L. Ed. 2d 515 (1967), the Court in a per curiam opinion reversed convictions for dissemination of materials that at least five members of the Court, applying their separate tests, deemed not to be obscene. In addition to *Redrup,* 31 other cases were disposed of in this fashion. *See* citations to 31 cases in *Paris Adult Theatre I* v. *Slaton, supra,* 413 U.S. at 83 n.8, 93 S. Ct. at 2647 n.8, 37 L. Ed. 2d at 472 n.8.

In this context of confusion and ambiguity, the Supreme Court again attempted to meet the challenge of what Mr. Justice Harlan had called "the intractable obscenity problem." *Interstate Circuit, Inc.* v. *Dallas,* 390 U.S. 676, 704, 88 S. Ct. 1298, 1313, 20 L. Ed. 2d 225, 243 (1968) (concurring and dissenting). In *Miller* v. *California,* 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973) the Court formulated a new definition of the term "obscene," reaffirming the principles of *Roth,* but rejecting the third element of

the three-pronged test of *Memoirs*. This new formulation was expressed as follows:

> "The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, [citation omitted]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value. We do not adopt as a constitutional standard the '*utterly* without redeeming social value' test of *Memoirs v. Massachusetts*, [citation omitted]; that the concept has never commanded the adherence of more than three Justices at one time. If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth amendment are adequately protected by the ultimate power of appellate protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary." *Id.* at 24-25, 93 S. Ct. at 2615, 37 L. Ed. 2d at 431.

The Court went on to give two examples of what a state statute could define for regulation under part (b) of the standard:

> "(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

> "(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibitions of the genitals." *Id.* at 25, 93 S. Ct. at 2615, 37 L. Ed. 2d at 431.

The Court also adopted a community as opposed to a national standard. Chief Justice Burger observed in writing for the Court:

> "Nothing in the First Amendment requires that a jury must consider hypothetical and unascertainable 'national standards' when attempting to determine whether certain materials are obscene as a matter of fact." *Id.* at 31-32, 93 S. Ct. at 2619, 37 L. Ed. 2d at 435.

The Court, in response to a suggestion by Mr. Justice Brennan in dissent, commented on the effect of this new definition upon pre-existing obscenity statutes:

> "We do not hold, as Mr. Justice Brennan intimates, that all States other than Oregon must now enact new obscenity statutes. Other existing state statutes, as construed heretofore or hereafter, may well be adequate." *Id.* at 24 n.6, 93 S. Ct. at 2615 n.6, 37 L. Ed. 2d at 430 n.6.

We must decide in light of the above statement whether this court by construction should incorporate the *Miller* standards into the definition of the term "obscene" as used in §11-31-1. Up to and including the time of the issuance of the indictment in this case the Legislature had not attempted to define this term. Since *Roth*, however, we have consistently construed the terms "obscene" and "obscenity" in this and other related statutes as including those limitations and constitutional inhibitions periodically suggested or declared by the Supreme Court of the United States. Indeed, in *In Re Seven Magazines*, 107 R.I. 540, 268 A.2d 707 (1970), Mr. Justice Joslin in a searching analysis of constitutional developments up to that time construed the term "obscene" as contained in G.L. 1956 (1969 Reenactment) §11-31.1-4, to include the then current *Roth-Memoirs* definitions as illuminated or obscured by the national standard test suggested in *Jacobellis*, and the ad hoc determinations in *Redrup*. Similar techniques of analysis were used in a number of cases in construing the term "obscene" as contained in G.L. 1956, §5-22-5. *Scuncio* v. *Shipyard Drive-In Theatre, Inc.*, 110 R.I. 292, 292 A.2d 873 (1972); *Scuncio* v. *Columbus Theatre, Inc.*, 108 R.I. 613, 277 A.2d 924 (1971); *Shipyard*

*Drive-In Theatre, Inc.* v. *Scuncio,* 107 R.I. 554, 268 A.2d 820 (1970), *appeal dismissed,* 401 U.S. 1005, 91 S. Ct. 1252, 28 L. Ed. 2d 541 (1971). These cases indicate beyond doubt that we have consistently believed the Legislature intended to proscribe the materials defined as being obscene under the current standards enunciated by the United States Supreme Court.

This approach is consistent with that which has been utilized by the Supreme Court itself. We observe that in *Roth* v. *United States, supra,* the Court incorporated its then current definition into the term "obscene" in 18 U.S.C. §1461. In *Hamling* v. *United States,* 418 U.S. 87, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974), the Court incorporated into this same section the new definition of the term "obscene" contained in *Miller* v. *California, supra.*[2] In answer to the argument that this created a crime not previously enumerated in the statutes at the time of their passage, Mr. Justice Rehnquist asserted:

> "[T]he enumeration of specific categories of material in *Miller* which might be found obscene did not purport to make criminal, for the purpose of 18 U.S.C. §1461, conduct which had not previously been thought criminal. That requirement instead added a 'clarifying gloss' to the prior construction and therefore made the meaning of the federal statute involved here 'more definite' in its application to federal obscenity prosecutions. [citation omitted] Judged by both the judicial construction of §1461 prior to *Miller,* and by the construction of that section which we adopt today in the light of *Miller,* petitioners' claims of vagueness and lack of fair notice as to the proscription of the material which they were distributing must fail." 418 U.S. at 116, 94 S. Ct. at 2907, 41 L. Ed. 2d at 620.

---

[2]Like §11-31-1, the federal statute was not new. Indeed, 18 U.S.C. §1461 is traceable in substantially similar form to the Act of July 12, 1876, ch. 186, §1, 19 Stat. 90 which also prohibited mailing of "obscene, lewd, or lascivious" materials and provided for criminal penalties for violation of such prohibition.

It is true that some states have declined to construe pre-existing statutes to include the *Miller* standards. *Commonwealth* v. *Horton,* 365 Mass. 164, 310 N.E. 2d 316 (1974); *Stroud* v. *State,* 261 Ind. 58, 300 N.E. 2d 100 (1973).[3] Other state courts have rendered decisions more consonant with the principles of *Hamling* and have incorporated the *Miller* standards. *See Mangum* v. *Maryland State Board of Censors,* 273 Md. 176, 191 n.10, 328 A.2d 283, 291 n.10 (1974); *accord, Pierce* v. *State,* 292 Ala. 473, 296 So. 2d 218, *cert. denied,* 419 U.S. 1130, 95 S. Ct. 816, 42 L. Ed. 2d 830 (1974); *Gibbs* v. *State,* 255 Ark. 997, 504 S.W. 2d 719 (1974); *Rhodes* v. *State,* 283 So. 2d 351 (Fla. 1973). As might be expected, the District of Columbia has followed this trend. *Retzer* v. *United States,* 363 A.2d 307 (D.C. App. 1976); *Lakin* v. *United States,* 363 A.2d 990, (D.C. App. 1976).

We are persuaded by the reasoning of *Hamling* and similar cases to continue to include within the term "obscene" the most recent formulation of standards adopted by the Supreme Court of the United States. We therefore construe §11-31-1 as it existed at the time of the return of this indictment as including the definition of "obscene" and the examples of patent offensiveness set forth in *Miller.* We point out that the Legislature has the power within the guidelines of *Miller* to give broader definitions than we are able to achieve within our more restricted role of constitutional and statutory interpretation. We realize that in 1978 the General Assembly unsuccessfully attempted to enact a revised form of §11-31-1 within the guidelines of *Miller.* The amended statute was found unconstitutional as violating the *Miller* standards because it improperly defined that which constituted an "obscene work." *D & J Enterprises, Inc.* v. *Michaelson,* 401 A.2d 440. This unsuccessful attempt to codify the *Miller* standards in no way detracted from the

---

[3]It should be noted that *Commonwealth* v. *Horton,* 365 Mass. 164, 310 N.E. 2d 316 (1974) and *Stroud* v. *State,* 261 Ind. 58, 300 N.E. 2d 100 (1973), were decided prior to *Hamling* v. *United States,* 418 U.S. 87, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974).

general intent previously manifested to prohibit the circulation of obscene materials subject to constitutional restriction.

We construe the provisions of article 1, section 10 of the Declaration of Rights of the Rhode Island Constitution as adding no further guarantees to the right of a defendant to be informed of the nature and cause of a criminal accusation than are provided by the parallel due process terms of the Federal Constitution which were found to be met in *Hamling* v. *United States, Supra.*

For the reasons stated, we answer the first certified question in the negative by holding that §11-31-1 was not invalid or void for impermissible vagueness and overbreadth.

We now confront the second certified question. The defendants argue that §11-31-15 was unconstitutional because it denied equal protection to bookstore employees and clerks who are not given the benefit of the same or similar exemptions embodied in §11-31-15. Section 11-31-1 applies penalties for the sale or distribution of obscene materials. Section 11-31-15 provides for exemption from penalties in the following terms:

> "Exemption from Penalties. — The penalties imposed by the provisions of this chapter shall not apply to a motion picture operator, or assistant operator, who is employed in a motion picture theatre, in connection with a motion picture show exhibited in said theatre, provided that such operator or assistant operator, has no financial interest in the motion picture theatre wherein he is so employed other than his wages."

The defendants argue that the term "operator" was not defined and may or may not thus have included all theatre employees. We reject this argument as in opposition to the clear and unambiguous meaning of the terms used in the statute. Webster's Third New International Dictionary defines the word "operator" as "[o]ne that produces a physical effect or engages himself in the mechanical aspect of

any process or activity." Applying this definition in the context of a motion picture theatre, we would construe the term "motion picture operator" to mean "motion picture projectionist." Thus, we hold that §11-31-15 purports to exempt only the motion picture projectionist or assistant projectionist as opposed to other theatre employees such as ushers, ticket takers or the like.

The defendants next argue that in determining the constitutionality of this exemption, the court should apply strict judicial scrutiny because the classification impermissibly interferes with the exercise of a fundamental right. We disagree.

The equal protection clause of the Fourteenth Amendment has been characterized as "undoubtedly one of the majestic generalities of the Constitution." *Trimble* v. *Gordon,* 430 U.S. 762, 777, 97 S. Ct. 1459, 1468, 52 L. Ed. 2d 31, 43 (1977) (Rehnquist, J. dissenting). From time to time the Supreme Court of the United States has applied strict judicial scrutiny to legislative classifications when the classifications were alleged to interfere with fundamental rights or to operate to the peculiar disadvantage of a suspect class. When a fundamental right or a suspect class is involved the classification must be subjected to strict judicial scrutiny and must be justified by a compelling state interest.[4] When a classification does not impinge upon a fundamental right or create a suspect class, a rational basis test is used. Under the rational basis test the legislative classification must be sustained unless

---

[4]*See, e.g.,* as to fundamental rights, *Roe* v. *Wade,* 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973) (right to privacy); *Bullock* v. *Carter,* 405 U.S. 134, 92 S. Ct. 849, 31 L. Ed. 2d 92 (1972) (right to vote); *Shapiro* v. *Thompson,* 394 U.S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969) (right to interstate travel); *Williams* v. *Rhodes,* 393 U.S. 23, 89 S. Ct. 5, 21 L. Ed. 2d 24 (1968) (First Amendment rights); *Skinner* v. *Oklahoma,* 316 U.S. 535, 62 S. Ct. 1110, 86 L. Ed. 2d 1655 (1942) (right to procreate). As to suspect classes, *see, e.g., Graham* v. *Richardson,* 403 U.S. 365, 91 S. Ct. 1848, 29 L. Ed. 2d 534 (1971) (alienage); *Loving* v. *Virginia,* 388 U.S. 1, 87 S. Ct. 1817, 18 L. Ed. 2d 1010 (1967) (race); *McLaughlin* v. *Florida,* 379 U.S. 184, 85 S. Ct. 283, 13 L. Ed. 2d 222 (1964) (race); *Oyama* v. *California,* 332 U.S. 633, 68 S. Ct. 269, 92 L. Ed. 2d 249 (1948) (national origin); *Korematsu* v. *United States,* 323 U.S. 214, 65 S. Ct. 193, 89 L. Ed. 2d 194 (1944) (national origin).

it is patently arbitrary or bears no rational relationship to a legitimate governmental interest. *Ohio Bureau of Employment Services* v. *Hodory,* 431 U.S. 471, 97 S. Ct. 1898, 52 L. Ed. 2d 513 (1977); *Massachusetts Board of Retirement* v. *Murgia,* 427 U.S. 307, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976); *Hughes* v. *Alexandria Scrap Corp.,* 426 U.S. 794, 96 S. Ct. 2488, 49 L. Ed. 2d 220 (1976); *Berberian* v. *Petit,* 118 R.I. 448, 374 A.2d 791 (1977).

The instant statute involves neither a suspect class nor a fundamental right. Despite numerous doubts which might be entertained concerning various aspects of the definition of obscenity, the Supreme Court of the United States has consistently and steadfastly maintained that obscenity does not come within the protection of the First Amendment. There is no constitutional right, fundamental or otherwise, to sell or distribute obscene materials. *Miller* v. *California,* 413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973); *Kois* v. *Wisconsin,* 408 U.S. 229, 92 S. Ct. 2245, 33 L. Ed. 2d 312 (1972); *Roth* v. *United States,* 354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957). There is no contention here that the classification is suspect as involving race, alienage, national origin or sex. Therefore, the traditional equal protection analysis is applicable. Accordingly, we must inquire whether this classification bears any rational relationship to a legitimate state purpose and whether the legislative classification rests upon some ground which has a fair and substantial relationship to the object of the legislation. *Berberian* v. *Petit, supra; Maryland State Board of Barber Examiners* v. *Kuhn,* 270 Md. 496, 312 A.2d 216 (1973).

In applying this analysis we are guided by other cases in which this type of classification has been examined. In *State* v. *J-R Distributors, Inc.,* 82 Wash. 2d 584, 512 P.2d 1049 (1973), the court considered an equal protection challenge to a statutory exemption for projectionist nearly identical to §11-31-15. Justice Stafford commented upon this challenge as follows:

"Defendant has presented an engaging argument, but

we do not agree with it. We have held consistently that when a statutory classification is challenged, if any state of facts reasonably can be conceived that will sustain it, there is a presumption that such facts exist. * * *

"There are valid reasons for the classification. The following are by no means exclusive: (1) Book and magazine stores offer a wide range of materials from which both the customer and clerk may select at the time of sale. Each has an opportunity to choose that which will be sold or purchased. On the other hand, motion pictures are shown one reel at a time and the projectionist must exhibit those selected by the manager. (2) Projectionists do not decide which films to exhibit and thus should not be obliged to make a judgment as to their obscenity. Furthermore, to require a projectionist to decide whether the showing of a particular film would be a crime might tend to 'chill' the dissemination of borderline, but constitutionally protected motion pictures." 82 Wash. 2d at 603-04, 512 P.2d at 1061-62.

California appellate courts have sustained similar exemptions in cases in which both strict judicial scrutiny and the rational basis test were applied.[5] *People* v. *Kuhns,* 61 Cal. App. 3d 735, 759-60, 132 Cal. Rptr. 725, 739 (1976) (strict scrutiny), *cert. denied,* 431 U.S. 973, 97 S. Ct. 2938, 53 L. Ed. 2d 1071 (1977); *Gould* v. *People,* 56 Cal. App. 3d 909, 919-20, 128 Cal. Rptr. 743, 749-50 (1976) (strict scrutiny); *People* v. *Haskin,* 55 Cal. App. 3d 231, 240-41, 127 Cal. Rptr. 426, 432 (1976) (rational basis test).

The defendants argue vigorously that we should adopt the rationale in *Wheeler* v. *State,* 281 Md. 593, 380 A.2d 1052 (1977), *cert. denied,* 435 U.S. 997, 98 S. Ct. 1650, 56 L. Ed. 2d 86 (1978), where the court held that a similar exemption

[5]In *People* v. *Kuhns,* 61 Cal. App. 3d 735, 132 Cal. Rptr. 725 (1976), *cert. denied,* 431 U.S. 973, 97 S. Ct. 2938, 53 L. Ed. 2d 1071 (1977) and *Gould* v. *People,* 56 Cal. App. 3d 909, 128 Cal. Rptr. 743 (1976), strict scrutiny was applied because the court felt the classification survived either test.

violated equal protection principles. In that case the Maryland Supreme Court struck down an obscenity statute exemption for all employees of any legal entity operating a motion picture theatre if the employee was not an officer or had no financial interest in the enterprise other than his salary or wage. The court applied a rational basis test and found that this classification was unwarranted by any reasonable legislative objective. In commenting upon the reasoning of the Maryland Court of Special Appeals which had found the exemption to be constitutional, Justice Orth observed for a majority of the court:

> "The basic fallacy, however, in the reasoning of the Court of Special Appeals is that the statute cannot be read so that the exemption pertains only to the showing of motion pictures as such. Thus, an usher in the exempted class who distributes to the theatre patrons a program concerning the film being shown, which program itself constituted obscene matter, would not be subject to the prohibitions of §418. The bookstore employee, however, or any other person not within the exempted class, who distributed that same program, would be subject to punishment for violation of the statute. Thus, the law operates on some persons and not upon others like situated or circumstanced." *Id.* at 605, 380 A.2d at 1059.

It is clear that the Maryland Supreme Court believed the vice of the exemption was that it was not limited to motion picture projectionists but included other theatre employees who might be in positions substantially identical to that of a clerk in a bookstore.

We believe that the exemption given to motion picture projectionists has a rational basis and that it recognizes the unique position of the projectionist who must watch the film as it unfolds. Thus, the exemption for the projectionist properly avoids the possible chilling effect on the showing of debatable or borderline motion pictures in the event that the projectionist should be forced to act as an informal censor.

While this classification may not be ideal or perfect, it cannot be said that it is lacking in any rational basis in furthering an appropriate legislative objective. *See Dandridge* v. *Williams,* 397 U.S. 471, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970).

Finally, we observe that the Supreme Court of the United States recently dismissed an appeal for want of a substantial federal question in a case involving an equal protection challenge to a California statutory exemption similar to §11-31-15. *Pendleton* v. *California,* 423 U.S. 1068, 96 S. Ct. 850, 47 L. Ed. 2d 79 (1976). The dismissal of such an appeal for want of a substantial federal question, unlike denial of certiorari, constitutes a binding precedent in respect to constitutional adjudication. *See Hicks* v. *Miranda,* 422 U.S. 332, 95 S. Ct. 2281, 45 L. Ed. 2d 223 (1975).

The remainder of the certified question regarding the constitutionality of §11-31-15 relates to provisions contained in §§11-31.1-6 and 11-31.1-7(e). In our opinion, those portions of chapter 31.1 of title 11 which relate generally to in rem proceedings under which obscene materials may be the subject of injunctive orders add nothing to the determination of the constitutionality of §11-31-15. The provisions of §§11-31.1-6 and -7(e) authorize the court in its discretion to except from its decree certain classes of persons, including scholars, scientists and physicians. These provisions merely provide for situations wherein materials which would otherwise be considered obscene may have utility for educational, literary or scientific purposes. They do not affect the constitutionality of §11-31-15.

For the reasons heretofore set forth, we believe that §11-31-15 does not violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and that it does not violate the provisions of article 1, section 2 and section 10 of the Declaration of Rights of the Constitution of Rhode Island. Thus, the second certified question is answered in the negative.

The papers in the case, with our decision certified thereon, are ordered to be remanded to the Superior Court for further proceedings.

Mr. Chief Justice Bevilacqua did not participate.

*John Murphy,* Assistant Attorney General, for plaintiff.

*Leonard A. Kamaras, William E. Seekford,* for defendant.